UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| SHANNON CARNEY, | CASE NO. 09cv1854 DMS (AJB) |
|---|---|
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| vs. | |
| VERIZON WIRELESS TELECOM, INC., et al., | |
| Defendants. | **[Docket No. 42]** |

This case comes before the Court on Defendants' motion to dismiss the First Amended Complaint ("FAC"). Plaintiff filed an opposition to the motion, and Defendants filed a reply. On April 21, 2010, the Court requested supplemental briefing from the parties on the effect of *North County Communications Corp. v. California Catalog & Technology*, 594 F.3d 1149 (9th Cir. 2010), on Plaintiff's fourth claim for relief for violation of the Federal Communications Act ("FCA"). Plaintiff submitted her supplemental brief on April 29, 2010, and Defendants submitted their supplemental brief on April 30, 2010. After thoroughly considering the parties briefs, evidence and the relevant legal authority, the Court grants in part and denies in part Defendants' motion.

**I.**

**BACKGROUND**

On July 23, 2008, Plaintiff purchased a cellular phone from a Verizon Wireless store in Sherman Oaks, California. (FAC at ¶ 34.) In conjunction with this purchase, Plaintiff entered into

1  a two-year wireless service agreement with Verizon. (*Id.*) The full retail price of the phone was
2  $279.99, but Plaintiff paid a sale price of $99.99. (*Id.* at ¶¶ 34-36.) Plaintiff alleges that at the time
3  of purchase, a Verizon salesperson told her that Verizon was required by law to charge her sales tax
4  on the full retail price of the phone as opposed to the sale price. (*Id.* at ¶ 35.) As so calculated, the
5  sales tax amounted to $23.10. (*Id.*) Plaintiff alleges she asked a sales manager why Verizon
6  calculated sales tax on the full retail price of the phone as opposed to the sale price. (*Id.* at ¶ 36.) The
7  manager responded that "Verizon was required by California state law to charge consumers the
8  bundled sales tax." (*Id.*) Plaintiff alleges that in deciding to purchase the phone from Verizon, she
9  relied on the statements of the Verizon employees that California law required her to pay the sales tax.
10 (*Id.* at ¶ 44.) Plaintiff also alleges she relied on these representations in deciding to purchase another
11 phone from Verizon in January 2009. (*Id.* at ¶¶ 45-46.)

12 Plaintiff alleges these representations are repeated in the Customer Information Overview
13 ("CIO") she received from Verizon. (*Id.* at ¶38.) She relies specifically on the section of the CIO
14 labeled "Taxes, Governmental Surcharges And Fees," which states, "Your bill will include sales,
15 excise and other taxes and governmental surcharges and fees that we are required by law to bill to
16 customers." (FAC, Ex. 3.)

17 On May 11, 2009, Plaintiff filed the present case against Verizon Wireless Telecom, Inc.
18 ("Verizon") in Los Angeles Superior Court. The original complaint alleged claims for violations of
19 California's Consumer Legal Remedies Act ("CLRA") and Business and Professions Code § 17200
20 ("UCL"). On July 2, 2009, Verizon removed the case to the United States District Court for the
21 Central District of California. Verizon filed its Answer to the complaint on August 21, 2009. A few
22 days later, the case was transferred to this Court.

23 On November 30, 2009, pursuant to the parties' stipulation, Plaintiff filed a First Amended
24 Complaint ("FAC") against Verizon and Cellco Partnership dba Verizon Wireless (collectively,
25 "Defendants"). The FAC realleges the claims under the CLRA and UCL, and adds claims for
26 violation of Business and Professions Code § 17500 ("FAL"), the FCA and fraud. In response to the
27 FAC, Defendants filed the present motion.
28 / / /

## II.

## DISCUSSION

Defendants raise several arguments in support of their motion to dismiss. First, they argue the allegations in the FAC are contradicted by the documents attached thereto. Second, they dispute whether the CIO applies to the purchase of products. Third, Defendants contend Plaintiff has failed to allege reliance. Fourth, Defendants argue Plaintiff has failed to state a valid claim under the FCA. Fifth, Defendants assert that a safe harbor protects them from Plaintiff's statutory claims. Sixth, Defendants maintain there is no private cause of action for seeking tax refunds from retailers. Seventh, Defendants assert the California Constitution bars Plaintiff's request for an injunction. Finally, Defendants contend Plaintiff's request for restitution is barred because Defendants did not benefit.

**A.    Standard of Review**

In two recent opinions, the Supreme Court established a more stringent standard of review for 12(b)(6) motions. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 1951. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.

**B.    Allegations in FAC v. Documents Attached Thereto**

Before turning to whether the factual allegations in the FAC plausibly suggest an entitlement to relief, the Court addresses Defendants' argument that Plaintiff's claims fail because the documents

1 attached to the FAC contradict Plaintiff's factual allegations. Specifically, Defendants contend
2 Plaintiff's February 18, 2009 letter to Verizon contradicts Plaintiff's allegation that a salesperson in
3 the Sherman Oaks store misrepresented that Verizon was required by law to charge Plaintiff sales tax
4 on the phone. Defendants assert Plaintiff's letter does not include this allegation, therefore it
5 contradicts the facts alleged in the FAC.

6 Defendants are correct that this specific allegation is not included in Plaintiff's letter.
7 However, the absence of that allegation does not render the letter contradictory to the allegations in
8 the FAC. The Court therefore rejects this argument.

9 **C.     Reliance**

10 Next, Defendants argue Plaintiff has failed to adequately plead the element of reliance.
11 Plaintiff disputes that she must allege reliance to support a claim of unfair or unlawful business
12 practices under the UCL. Plaintiff agrees that she must allege reliance to support a claim of fraudulent
13 business practices under the UCL, and asserts she has done so.

14 In *Laster v. T-Mobile USA, Inc.*, No. 05cv1167, 2009 WL 4842801 (S.D. Cal. Dec. 14, 2009),
15 this Court held that for UCL claims based on misrepresentations, the plaintiff must show actual
16 reliance regardless of whether the claim arises under the "unfair," "unlawful" or "fraudulent" prong
17 of the UCL. *Id.* at *5 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)). Plaintiff does not
18 address *Laster* in her opposition brief, but instead relies directly on *In re Tobacco II*. In that case, the
19 California Supreme Court stated, "[t]here are doubtless many types of unfair business practices in
20 which the concept of reliance, as discussed here, has no application." 46 Cal. 4th at 325 n.17. Plaintiff
21 asserts her case falls into that category, but the Court disagrees. As in *Laster*, this case is based on
22 affirmative misrepresentations. Accordingly, regardless of the label Plaintiff applies to Defendants'
23 conduct ("unfair," "unlawful" or "fraudulent"), she must plead and prove reliance to prevail on her
24 UCL claim.

25 In *In re Tobacco II*, the court stated that reliance is proved by "show[ing] that the
26 misrepresentation was an immediate cause of the injury-producing conduct[.]" *Id.* at 326. A plaintiff
27 can make this showing by demonstrating that, "in all reasonable probability," she would not have
28 engaged in the injury-producing conduct absent the misrepresentation. *Id.* (quoting *Mirkin v.*

1 *Wasserman*, 5 Cal. 4th 1082, 1110-1111 (1993)).  Defendants argue Plaintiff has failed to make that showing here because "she does not allege what she did in reliance upon the purported statements." (Mem. of P. & A. in Supp. of Mot. at 10.)  However, Plaintiff does so allege.  (*See* FAC at ¶¶ 44, 46) ("Relying on Defendants' false misrepresentations ... [Plaintiff] did not shop around for retailers that do not opt to charge the discretionary cost recovery fee.")  Contrary to Defendants' assertion, these allegations are sufficient to survive Defendants' motion to dismiss.

**D.  The CIO, the Assurance of Voluntary Compliance ("AVC") and the CTIA Consumer Code for Wireless Service ("CTIA Code")**

Plaintiff attaches the CIO, the AVC and the CTIA Code to the FAC as Exhibits 3, 4 and 7, respectively.  Defendants argue these documents apply to service only, and thus they do not support Plaintiff's claims.  Plaintiff does not rely on the AVC as a basis for her claim, (*see* Mem. of P. & A. in Opp'n to Mot. at 4), but rather attached it to the FAC "to show Verizon is a repeat offender." (*Id.*) The role of the CTIA Code is less clear, but it, too, appears to serve as evidence in support of Plaintiff's claims rather than a basis therefor.  Accordingly, the Court will not address the scope of these documents in deciding the present motion.

In contrast, Plaintiff relies directly on the CIO to support her claims under the CLRA and the UCL.  (*See* FAC at ¶¶ 64, 72.)  Defendants argue the CIO cannot serve as a basis for Plaintiff's claims because it applies to service only.  In support of this argument, Defendants rely on two sections of the CIO.  The first section is found in the first paragraph, which states: "We think it makes sense to help you understand your *wireless service* in a simple way, so here are answers to some questions we've heard customers ask."  (FAC, Ex. 3 at CIO-P.1) (emphasis added).  Defendants also rely on the allegedly offending portion of the CIO, which states: "Your bill will include sales, excise and other taxes and governmental surcharges and fees that we are required by law to bill to customers."  (*Id.* at CIO-P.2.)  Defendants argue that a reasonable person would understand "your bill" to refer to the monthly bill for wireless service, not the initial purchase of the phone.

Plaintiff does not address these portions of the CIO, but instead relies on other portions to support her position that the CIO applies to the purchase of her phone.  Specifically, Plaintiff relies

///

1 ///

2 on those portions of the Customer Agreement ("CA")[1] that mention a "wireless phone." (*See* Mem.
3 of P. & A. in Opp'n to Mot. at 3.)

4 Clearly, the CIO and the CA, as a whole, provide information about both service and phones. 5 However, the allegedly offending portion of the CIO refers to "your bill." Although Plaintiff argues 6 "your bill" could refer to the initial purchase of the phone, the more reasonable interpretation is that 7 it refers to the monthly bill for wireless service. The preceding paragraph of the CIO refers to "your 8 bill," and states it will include charges that are "subject to change." If "your bill" applied to the initial 9 purchase, the charges would not be subject to change, but would be fixed at the time of purchase. 10 Subsequent paragraphs of the CIO also refer to "your bill" as having "cycles," and refer to a "first bill" 11 and "subsequent bills." Each of these references supports the finding that the "bill" mentioned in the 12 allegedly offending portion of the CIO refers to the monthly service bill, not the bill for the purchase 13 of the phone. Accordingly, to the extent Plaintiff relies on the CIO as a basis for her claims, those 14 claims are dismissed.

15 **E.     The FCA Claim**

16 In her fourth claim for relief, Plaintiff alleges Defendants violated the FCA, 47 U.S.C. § 17 201(b). This statute provides: "All charges, practices, classifications, and regulations for and in 18 connection with such communication service, shall be just and reasonable, and any such charge, 19 practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful[.]" 47 20 U.S.C. § 201(b). In a recent case, the Ninth Circuit found that before a plaintiff may bring a claim 21 for violation of this statute, the Federal Communication Commission ("FCC") must "determine 22 whether a particular practice constitutes a violation for which there is a private right to compensation." 23 *North County Communications Corp.*, 594 F.3d at 1158. The parties disagree as to whether that 24 requirement has been met in this case.

25 Plaintiff argues the FCC's March 18, 2005 Second Report and Order, Declaratory Ruling, and 26 Second Further Notice of Proposed Rulemaking ("Report") constitutes the "requisite predicate 27 determination" for Plaintiff's claim. (Pl.'s Supp. Br. at 3.) That Report states,

28
---
[1] The CA is attached to the CIO. (*See* FAC, Ex. 3.)

- 6 -                                                                                                09cv1854

1 ///

> Consistent with the Commission's prior findings, we reiterate that it is a misleading practice for carriers to state or imply that a charge is required by the government when it is the carriers' business decision as to whether and how much of such costs they choose to recover directly from consumers through a separate line item charge.

(FAC, Ex. 1 at ¶ 27.) However, there is no evidence that these findings apply to the "particular practice" at issue in this case. Rather, the Report, as a whole, is directed to "a Petition for Declaratory Ruling filed by the National Association of State Utility Consumer Advocates (NASUCA) seeking to prohibit telecommunications carriers from imposing any separate line item or surcharge on a customers' bill that was not mandated or authorized by federal, state or local law." (*Id.* at ¶ 1.) Like the CIO discussed above, the "bill" at issue in the report appears to be the customers' monthly service bill, not the bill for the purchase of the initial product. Accordingly, the Court rejects Plaintiff's argument that the Report provides the necessary prerequisite to Plaintiff's FCA claim.

The Court also rejects Plaintiff's argument that she may proceed with this claim absent a prior determination from the FCC that the practice at issue here is unlawful. In essence, Plaintiff asserts that fraud is unlawful, she has alleged a claim for fraud, therefore the practice at issue here is unlawful. However, there has been no determination by the FCC or any other administrative or adjudicative body that Defendants have committed fraud. Plaintiff's allegation of fraud is simply not enough to proceed with the FCA claim.

In light of *North County Communications Corp.*, the Court finds Plaintiff has failed to state a valid FCA claim. Accordingly, the Court grants Defendants' motion to dismiss this claim.

**F.  Safe Harbor**

Next, Defendants argue that California Civil Code § 1656.1(a) and 18 Cal. Code Regs. § 1585(b)(3) provide them with safe harbor from Plaintiff's statutory claims. Section 1656.1(a) states, "Whether a retailer may add sales tax reimbursement to the sales price of the tangible personal property sold at retail to a purchaser depends solely upon the terms of the agreement of sale." Cal. Civ. Code § 1656.1(a). The statute then goes on to identify situations that give rise to a presumption "that the parties agreed to the addition of sales tax reimbursement to the sales price of tangible personal property sold at retail to a purchaser[.]" *See* Cal. Civ. Code § 1656.1(a)(1)-(3). Regulation

1585(b)(3) states, "The retailer of the wireless telecommunication device is required to report and pay tax measured by the unbundled sales price of the device and may collect tax or tax reimbursement from its customer measured by the unbundled sales price." Cal. Code Regs. tit. 18 § 1585(b)(3).

Neither the statute nor the regulation, however, applies to the practice at issue here. As Plaintiff makes clear, she is not challenging Defendants' ability to *collect* the tax from consumers. Rather, she takes issue with the manner in which Defendants' *represent* the tax to consumers, *i.e.*, that Defendants are required by law to collect the tax from consumers when in fact the law only permits Defendants to collect the tax, it does not require that they do so. Because neither Section 1656.1(a) nor Regulation 1585(b)(3) addresses this precise situation, Defendants are not entitled to safe harbor protection from Plaintiff's statutory claims.

**G.    Requested Relief**

Finally, Defendants argue Plaintiff's requests for restitution and an injunction should be dismissed. Specifically, they argue Plaintiff's request for restitution is an improper attempt to obtain a tax refund, and further, that restitution is unavailable because Defendants did not receive any unjust enrichment. Defendants also assert that Plaintiff's request for an injunction is barred by the California Constitution.[2]

1.    Restitution

In contrast to Defendants' argument, Plaintiff states she is not attempting to obtain a tax refund in this case. Rather, she is attempting to recover the fees that Verizon imposed on her in connection with the purchase of her cell phones. Although Verizon used those fees to fulfill its obligation to pay sales tax, Plaintiff states she is not the taxpayer in this situation, therefore she is not seeking a tax refund. Plaintiff also argues that Defendants were unjustly enriched in that Plaintiff reimbursed them for the sales tax even though she was not required to do so. The Court finds both of these arguments persuasive, and thus declines to dismiss Plaintiff's request for restitution.

///

---

[2] Defendants assert these arguments are currently under review by the California Supreme Court in *Loeffler v. Target Corp.*, 99 Cal. Rptr. 3d 866 (2009), and *Yabsley v. Cingular Wireless*, 101 Cal. Rptr. 3d 655 (2009), and therefore request that the Court stay this action pending decisions in those cases. However, the Court declines to do so.

///

### 2. Injunction

With respect to Plaintiff's request for an injunction, Defendants argue this request is barred by Article XIII, § 32 of the California Constitution, which states, "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax." Cal. Const. art. XIII, § 32. However, Defendants fail to explain how this section applies to them, and they mischaracterize Plaintiff's requested injunction. Contrary to Defendants' assertion, Plaintiff is not seeking to enjoin either the State or Defendants from collecting sales taxes. Rather, she is seeking to enjoin Defendants "from continuing to make false and misleading misrepresentations with respect to discretionary cost recovery fees which reimburse retailers for bundled sales tax costs, but which retailers are not legally obligated to charge and are not taxes on the consumer[.]" (FAC at 25.) This relief is not barred by the California Constitution, and thus, the Court declines to dismiss it.

## III.

## CONCLUSION AND ORDER

For these reasons, the Court grants in part and denies in part Defendants' motion to dismiss. Specifically, the Court grants the motion to dismiss Plaintiff's claims to the extent they rely on the CIO. The Court also grants Defendants' motion to dismiss Plaintiff's fourth claim for relief for violation of the FCA. As to the remainder of Defendants' arguments, the motion is denied.

**IT IS SO ORDERED.**

DATED: May 13, 2010

_____
HON. DANA M. SABRAW
United States District Judge