# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON CARNEY,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>VERIZON WIRELESS TELECOM, INC., et al.,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 09CV1854 DMS (WVG)<br><br>**ORDER GRANTING RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING ARBITRATION**<br><br>**[Docket No. 69]** |

Pending before the Court is a renewed motion by Defendants Verizon Wireless Telecom, Inc., and Cellco Partnership dba Verizon Wireless (collectively, Verizon) to compel Plaintiff Shannon Carney to arbitrate her claims against Verizon and to stay proceedings pending arbitration. (Doc. 69.) Having carefully considered the relevant legal authority and arguments of each party, the Court now grants Verizon's motion.

**I.**

**BACKGROUND**

The current dispute centers around the scope of an arbitration provision between Plaintiff and Verizon, which is contained within the "Verizon Wireless Customer Agreement" (Customer Agreement) Plaintiff agreed to when she purchased cellular phones in two separate bundled transactions from Verizon. In those transactions, Plaintiff was able to purchase the phones at a discounted price, on the condition that she enter into a wireless service contract with Verizon for a

specified duration of time. (First Amended Complaint ("FAC") ¶ 34.) Despite the discount, Verizon billed Plaintiff for the sales tax on the non-discounted price of the phone. (*Id.* ¶ 35.) Plaintiff alleges that Verizon deceived her when it informed her that California state law required the company to bill its customers tax based on the full retail price of the phone. This "tax," according to Plaintiff, is not a tax mandated by California law, but is merely a discretionary cost recovery fee. (*Id.*) In her FAC, Plaintiff alleges claims against Verizon under the Consumer Legal Remedies Act, Unfair Competition Law, False Advertising Law, Federal Communications Act, and for fraud. (*Id.* ¶¶ 55-104.)

On June 1, 2010, Verizon moved to compel arbitration of Plaintiff's claims against it and stay the proceedings pending the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 130 S.Ct. 3322 (2010). (Doc. 60.) This Court denied Verizon's motion to compel, finding the arbitration agreement to be unconscionable under Ninth Circuit law, but granted the motion to stay. (Doc. 68.)

On April 27, 2011, the Supreme Court issued its decision in *Concepcion*.[1] *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S.Ct. 1740 (2011). The Court determined that the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), "preempts California's rule which classified most collective-arbitration waivers in consumer contracts as unconscionable." *Id.* at 1746. In so holding, the Court noted that California's rule stood in the way of Congress's purpose in enacting the FAA – "ensur[ing] that private arbitration agreements are enforced according to their terms." *Id.* at 1748, 53 (citations omitted). On June 2, 2011, in light of the *Concepcion* decision, Verizon renewed its motion to compel arbitration and stay the action pending arbitration. (Doc. 69.)

## II.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs arbitration agreements in contracts involving transactions in interstate commerce. 9 U.S.C. § 1; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). Congress intended courts to construe commerce as broadly as

---

[1] The underlying facts of *Concepcion* are very similar to those of the present case. There, the Concepcion plaintiffs alleged AT&T Mobility engaged in fraud and false advertising when it charged sales tax on the full retail price of phones it advertised as free. The issue was whether the arbitration agreement between the parties was enforceable under California law. *Concepcion*, 131 S.Ct. 1740.

1  possible. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). Pursuant to Section 2 of the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute; rather, the court must limit its inquiry to: (1) whether a valid agreement to arbitrate exists, and, if it does (2) whether the agreement encompasses the dispute at issue. *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923-24 (9th Cir. 2011) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Finally, a court interpreting an arbitration agreement must give due regard to the federal policy favoring arbitration; ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *AT & T Techs. Inc. v. Comm. Workers of America*, 475 U.S. 643, 650 (1986) ("in the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.") If the Court is satisfied the issue involved in a suit is referable to arbitration, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...." 9 U.S.C. § 3.

## III.

## DISCUSSION

As an initial matter, the Court notes that the parties do not dispute the existence of a valid arbitration agreement. Rather, they disagree about the scope of that agreement, and whether it encompasses Plaintiff's underlying claims relating to her phone purchases.

In support of its motion, Verizon directs the Court to the terms of the Agreements Plaintiff entered into when she consummated the bundled transactions with Verizon on July 23, 2008, and again on January 26, 2009. The Agreement provides in pertinent part,

> I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT (CA), INCLUDING THE CALLING PLAN ... AND OTHER TERMS AND CONDITIONS FOR SERVICES AND SELECTED FEATURES I HAVE AGREED TO PURCHASE AS REFLECTED ON THE RECEIPT ... AND WHICH I HAD THE OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM AGREEING TO ... SETTLEMENT OF DISPUTES BY ARBITRATION AND OTHER MEANS INSTEAD OF JURY TRIALS AND OTHER IMPORTANT TERMS IN THE CA.

(Diaz Decl. Exs. 1 & 2) (capital letters in original.)  The Customer Agreement referenced in the Agreement contains the arbitration clause in dispute, which provides:

> **Dispute Resolution and Mandatory Arbitration**
>
> **WE EACH AGREE TO SETTLE DISPUTES (EXCEPT CERTAIN SMALL CLAIMS) ONLY BY ARBITRATION.... WE ALSO AGREE, TO THE FULLEST EXTENT PERMITTED BY LAW, THAT:**
>
> (1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR QUALIFYING SMALL CLAIMS COURT CASES, ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT ... OR ANY PRODUCT OR SERVICE PROVIDED UNDER OR IN CONNECTION WITH THIS AGREEMENT OR SUCH A PRIOR AGREEMENT ... WILL BE SETTLED BY ONE OR MORE NEUTRAL ARBITRATORS....

(FAC Ex. 3) (capital and bold letters in original.)

Verizon argues that Plaintiff's claims against it relating to the allegedly improper sales tax charged on Plaintiff's phone purchases fall "squarely within the terms of her arbitration agreement." (Motion to Compel at 8, 9.)  As the parties do not disagree about the existence of a valid, enforceable arbitration agreement, the Court proceeds to the issue of whether the arbitration agreement encompasses the current dispute.  *Samson*, 637 F.3d at 923-24 (citation omitted).

It is well-settled that federal policy favors arbitration.  *Chiron*, 207 F.3d at 1131; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995).  The Supreme Court affirmed this policy in *Concepcion*, noting that the federal policy favoring arbitration agreements is a liberal one, "notwithstanding any state policies to the contrary."  130 S.Ct. at 1749 (citation omitted).  In light of this policy, the Supreme Court has instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

The Court concludes that the terms of the arbitration clause encompass Plaintiff's dispute about the sales tax charged on her cellular phone purchases.  The dispute is clearly one that "relates to the amount that Plaintiff paid for the products sold by Verizon Wireless 'in connection with' the Customer Agreement, [and thus] is within the scope of the parties' agreement to arbitrate."  (Mot. to Compel at 9.)  Plaintiff's argument that the cellular phones were not provided in connection with the Customer

1  Agreement is without merit, as Plaintiff was able to purchase the phones at a discounted price *because*
2  she agreed to enter into a wireless service contract with Verizon for a specified period of time.

3  Plaintiff points to her transaction with Verizon on July 23, 2008, as support for her argument.
4  She contends that because she purchased her phone at 1:18 p.m., and subsequently entered into the
5  Customer Agreement at 1:19 p.m., she owned the phone prior to agreeing to the Customer Agreement.
6  (Opp'n. at 6.) According to Plaintiff, "[a] phone already owned is not *provided in connection with*
7  the [Customer Agreement]." (*Id.*) But this argument ignores the realities of the transaction as well
8  as the allegations of Plaintiff's complaint. Plaintiff, after receiving the phones at a discounted price,
9  was not free to leave without committing to Verizon's wireless service agreement. (*See* FAC ¶ 34
10 ("As a condition for receiving the cell-phone at a discounted price, [Plaintiff] agreed to enter into a
11 wireless service[] agreement with Verizon for a two-year period.")). Accordingly, the Court finds that
12 the Customer Agreement and arbitration clause apply to the present dispute.

13 Plaintiff next argues that several of Verizon's documents refer to wireless service, but not to
14 cellular phones, and this indicates Verizon did not intend the terms of the Customer Agreement to
15 apply to the phones. Plaintiff notes that the Agreement she signed when purchasing the cellular
16 phones "lists all of [her] purchases *except the phones* – the Calling Plan ... Caller ID, a Plan/Feature
17 Brochure, and a Welcome Guide containing, among other things, the WSA." (Opp'n. at 4.) Plaintiff
18 also notes that Verizon provided her with separate receipts for the phone purchases, and these receipts
19 did not contain any agreements. (*Id.* at 5.) As such, Plaintiff argues, Verizon deliberately omitted the
20 phones from the Agreement and receipts, and did not intend the Customer Agreement to apply to
21 phones. (*Id.*)   Plaintiff's interpretation of the Agreement, however, ignores its first sentence,
22 "I agree to the current Verizon Wireless Customer Agreement (CA) . . . ." (Diaz Decl., Exs. 1 & 2.)
23 By signing the Agreements, Plaintiff clearly agreed to abide by the Customer Agreement and the
24 arbitration provision contained therein. In addition, because the terms of the Customer Agreement
25 apply to the entire bundled transaction, the absence of a separate agreement on the receipts for the
26 phones is irrelevant. Nothing in the Agreements, Customer Agreements, arbitration clause, or receipts
27 excludes Plaintiff's cellular phones from these agreements.

28

Finally, Plaintiff argues that because Verizon's present motion directly contradicts a position it took in an earlier pleading, "Verizon should ... be judicially estopped from arguing against itself." (Opp'n. at 9.) Specifically, Plaintiff points out that in Verizon's Reply Brief in Support of its Motion to Dismiss the FAC ("Reply Brief"), Verizon asserted: "Plaintiff continues to misconstrue the documents attached to her FAC. All of these documents unambiguously concern disclosures and charges on monthly *cellular service* bills, not on cellular phone purchases in either stand-alone or bundled transactions." (Opp'n. at 9 (quoting Verizon's Reply Brief at 7).)

Verizon argues that by this statement, it was only referring to those documents that were attached to the FAC *and* which Plaintiff continued to misconstrue: the Customer Information Overview, the CTIA Code, the Assurance of Voluntary Compliance, and the Federal Communication Commission's Proposed Rulemaking. (Reply at 10.) Plainly, Verizon's stated position was that "[all of] the documents attached to [Plaintiff's] FAC" do not concern cellular phone purchases, and the Customer Agreement was one of those documents. Elsewhere in its earlier filed pleading, Verizon argued, "[m]erely because Plaintiff purchased her phone with service does not mean that the CIO (or the Customer Agreement) has anything to do with the sales tax charged on phone purchases." (Reply Brief at 7.) That position clearly is inconsistent with Verizon's current position – that the Customer Agreement, and its arbitration clause, apply to disputes about the sales tax charged on cellular phone purchases.

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citing *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 (2000)). The doctrine is an equitable one that is invoked by a court at its discretion, after consideration of three factors. *Id.* First, the party's two positions – as here – must be "clearly inconsistent" with each other. *Id.* (citing *United States v. Hook*, 195 F.3d 299 306 (7th Cir. 1999)). Second, the court looks to whether the party has "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a latter proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982)). Finally, the court must consider whether the party against whom estoppel

is sought would "derive an unfair advantage" if not estopped. *In re Hoopai*, 581 F.3d 1090, 1097 (9th Cir. 2009) (citations omitted).

///

Applying these factors, the Court declines to invoke judicial estoppel because this Court was not persuaded to accept Verizon's earlier position, and thus Verizon did not benefit from its inconsistent position. In the May 13, 2010 Order granting in part and denying in part Verizon's Motion to Dismiss the FAC (Doc. 57), the Court did not address whether the Customer Agreement had anything to do with the sales tax charged on the purchase of phones. The Court only found, in relevant part, that the Customer Information Overview "refers to the monthly service bill, not the bill for the purchase of the phone." (Order, Doc. 57 at 6.)

## IV.

## CONCLUSION

For these reasons, Verizon's renewed motion to compel arbitration of Plaintiff's claims against it and to stay the proceedings pending arbitration is granted. The Clerk of Court shall administratively close this case pending completion of the arbitration proceedings.

**IT IS SO ORDERED.**

DATED: August 9, 2011

HON. DANA M. SABRAW
United States District Judge